UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA WESTON,                )
                              )
            Plaintiff,        )   Case No.:
                              )
      v.                      )
                              )   Jury Trial Demanded
DB PRIVATE WEALTH             )
MORTGAGE, LTD.,               )
                              )
            Defendant.        )

# COMPLAINT

Plaintiff, Pamela Weston (hereinafter, "Pam"), for her complaint against DB Private Wealth Mortgage, LTD., (hereinafter, "DB Private Wealth"), states as follows:

## WHY PLAINTIFF BRINGS THIS CASE

1. Pam brings this case to stop DB Private Wealth's interference with her expectancy in the real property located at and commonly known as 1180 Laurel Avenue, Winnetka, Cook County, Illinois 60093, (hereinafter "Winnetka"). For many years, Winnetka has been a marital home to Pam and her husband, Roger Weston ("Roger"), and the source

of many fond memories, important family events, and positive sentiments.

2. The couple previously entered into a prenuptial agreement granting Pam an expectancy interest in Winnetka. Roger is 79 and under his estate plan, set out that Pam would receive Winnetka free and clear of any liens and mortgages. Roger is ten years older than Pam and their estate and long-term financial planning is predicated upon their expectation that Pam will outlive Roger.

3. From no later than 2009 until late 2017, Pam and Roger were the victims of an insidious embezzlement scheme at the hands of a trusted confidant, Sultan Issa, (hereinafter "Issa"). Issa pled guilty in federal court to wire fraud in an information that confirmed his embezzlement scheme and is currently serving a federal prison sentence.

4. As part of Issa's embezzlement, Issa secretly forged loan documents purporting to grant a first mortgage against Winnetka to DB Private Wealth.

5. Issa used the loan proceeds received from DB Private Wealth from the fraudulent and forged mortgage against Winnetka for his own

purposes and for the furtherance and concealment of his ongoing criminal scheme.

6. When Issa's scheme came to light in or around October of 2017, Pam learned from her husband that Issa had secretly forged mortgage documents to take a mortgage loan against Winnetka.

7. Pam's prenuptial agreement with Roger granted her fee simple ownership of Winnetka free and clear of any mortgages or other liens against Winnetka upon her husband's demise.

8. Issa's secretly forged mortgage documents were filed as an encumbrance on Winnetka by DB Private Wealth shortly after Issa had submitted the falsified, fraudulent, and forged mortgage documents to DB Private Wealth.

9. When Issa's criminal conduct was finally uncovered, Issa admitted secretly forging the Winnetka mortgage documents for the DB Private Wealth loan that formed the basis for DB Private Wealth's mortgage against Winnetka.

10. As part of his criminal prosecution, Issa admitted he misappropriated more than $70 million dollars in funds from clients and financial institutions, provided financial institutions

with fraudulent loan documents and forged fraudulent authorizations purportedly in the name of Roger, Pam, and Roger's various business entities, and lied to them about the use, status, and safety of their invested funds. To continue and conceal his scheme, Issa created and provided false and misleading account statements and made Ponzi-type payments to cover up his fraud.

11. DB Private Wealth, through its affiliate Deutsche Bank, received an order of restitution against Issa in an amount exceeding $4,000,000. Upon information and belief, this restitution order covers the funds from the forged loan involving the Winnetka property.

12. Despite having knowledge of Issa's crimes, including knowledge that Issa forged the Winnetka mortgage documents, DB Private Wealth has pursued a foreclosure action seeking to foreclose on Winnetka in reliance upon Issa's forged mortgage.

13. Prior to filing this action, on September 1, 2022, Pam sent a formal demand to DB Private Wealth requesting DB Private Wealth dismiss its foreclosure action in Cook County, Illinois, and release Issa's forged mortgage against Winnetka.

14. After DB Private Wealth's original and first amended foreclosure complaints were dismissed, and after its motion for leave to file a second amended foreclosure complaint was denied, and after receiving Pam's September 1, 2022, demand, DB Private Wealth recently filed a new and separate foreclosure action against Winnetka seeking to foreclose Winnetka with Issa's forged mortgage documents.

15. On September 21, 2022, Pam provided DB Private Wealth an amended demand setting forth documents and additional details highlighting Issa's admissions regarding his forgery of the Winnetka mortgage and renewing Pam's demand that DB Private Wealth cease its foreclosure and release Issa's fraudulent and forged mortgage.

16. Pam included in the amended demand records from Issa's criminal prosecution highlighting Issa's admissions of forgery along with the testimony of the notary public who notarized the forged Winnetka mortgage documents.

17. The notary testified she was acting under Issa's direction, supervision, and control when she notarized the DB Private Wealth mortgage involving Winnetka. The documents were signed when Issa

brought them to her, and she was aware that Pam and Roger did not sign the mortgage documents she notarized.

18. Despite receiving these documents relating to Issa's criminal prosecution, DB Wealth has continued to pursue foreclosure of Winnetka.

19. The DB Private Wealth mortgage is a cloud upon the title of Winnetka.

20. Pam has both a contractual and testamentary expectancy in Winnetka.

21. Pam has demanded that DB Private Wealth cease its efforts to foreclose on Winnetka and release Issa's fraudulent and forged mortgage to restore the title to Winnetka to its status as it existed before Issa's criminal wrongdoing: free and clear of any liens or mortgages.

22. DB Private Wealth, despite numerous warnings, and with clear knowledge of its continued wrongdoing, has failed and refused to cease its foreclosure efforts against Winnetka and to uncloud the title to Winnetka by releasing Issa's fraudulent and forged mortgage.

23. DB Private Wealth thereby continues to interfere with Pam's expectancy in Winnetka.

24. DB Private Wealth's conduct is intentional, knowing, and in reckless disregard of Pam's expectancy rights in Winnetka.

25. DB Private Wealth's conduct has inflicted needless harm on Pam by needlessly threatening her expectancy interest in Winnetka.

26. DB Private Wealth's conduct has needlessly harmed Pam as further set out in the complaint.

## PARTIES, JURISDICTION AND VENUE

27. Pam is a resident of the State of Florida who also spends substantial time in the greater Chicago area, including at her home in Winnetka. Winnetka is in Cook County, Illinois.

28. The Defendant DB Private Wealth is a New York domestic corporation with a principal place of business of 60 Wall Street, 27th Floor, New York, New York 10005. DB Private Wealth does business in this judicial district.

29. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000.00 exclusive of punitive damages, and/or interest and costs, and is between citizens of different States.

30. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

31. Pam seeks recovery of all damages available under the law including compensatory and punitive damages as well as attorney fees and costs. In addition, Pam seeks equitable relief requiring DB Private Wealth to cancel Issa's fraudulent and forged mortgage against Winnetka.

## ADDITIONAL FACTS

32. Pam and Roger were victimized by one of the most notorious embezzlement schemes in the recent history of Chicago. This scheme was perpetrated by Issa. Issa occupied a position of trust with the Weston family office.

33. Through his position of trust, Issa created an elaborate embezzlement scheme that successfully misled Roger until the scheme was discovered in or around October 2017.

34. As part of his criminal prosecution, Issa admitted to forging mortgage documents and defrauding lenders and financial institutions.

35. DB Private Wealth's conduct constitutes an interference with Pam's expectancy interest in Winnetka.

36. Pam has demanded that DB Private Wealth cease and desist from its interference with her expectancy interest in Winnetka.

37. Despite this, DB Private Wealth still seeks to foreclose on Winnetka and thereby terminate Pam's expectancy interest in Winnetka.

38. By refusing to cancel Issa's fraudulent and forged mortgage against Winnetka, DB Private Wealth has placed a cloud upon the title to Winnetka.

39. DB Private Wealth has also slandered the title to Winnetka by maintaining the validity of the fraudulent and forged mortgage while knowing the mortgage is the product of Issa's fraud and forgery.

40. Despite Pam's best efforts to avoid litigation, DB Private Wealth has failed and refused to take the steps necessary to avoid litigation.

41. DB Private Wealth's outrageous conduct and utter indifference to its legal obligations directly and proximately resulted in needless harm to Pam.

## DAMAGES CAUSED BY DB PRIVATE WEALTH

42. DB Private Wealth's conduct here resulted in substantial harms that no person should ever be expected to endure.

43. DB Private Wealth directly and proximately caused Pam the following needless harms and damages, among others:

    A. DB Private Wealth clouded the title to Winnetka.

    B. DB Private Wealth slandered the title to Winnetka.

    C. DB Private Wealth pursued foreclosure against Winnetka seeking to enforce a mortgage known to be fraudulent and forged.

    D. Pam has suffered and continues to suffer stress, worry, anxiety, and depression, related to her fear that DB Private Wealth could somehow take Winnetka utilizing Issa's fraudulent and forged mortgage.

    E. DB Private Wealth's actions have caused and continue to cause Pam to suffer severe mental and emotional distress.

    F. Pam suffered economic losses related to her efforts to halt DB Private Wealth's misconduct without litigation.

    G. Pam has also suffered and continues to suffer embarrassment, humiliation, and shame

associated with DB Private Wealth's efforts to foreclose on Winnetka.

## **COUNT ONE**

**[Tortious Interference with a Testamentary Expectancy]**

44. Pam restates and incorporates all prior paragraphs and allegations as if fully rewritten herein.

45. Pam has an expectancy interest in Winnetka.

46. DB Private Wealth has intentionally interfered with Pam's expectancy by seeking to enforce and foreclose upon Issa's fraudulent and forged mortgage.

47. DB Private Wealth's conduct is tortious in itself, by utilizing a fraudulent and forged mortgage to threaten Pam's expectancy in Winnetka.

48. There is a reasonable certainty that Pam's expectancy will be realized but for the interference of DB Private Wealth.

49. DB Private Wealth has caused Pam injuries and damages as set out in the complaint.

# COUNT TWO

## [Interference with an Economic Expectancy]

50. Pam restates and incorporates all prior paragraphs and allegations as if fully rewritten herein.

51. Pam had an expectancy in Winnetka through her written agreement with her husband.

52. DB Private Wealth's conduct is an intentional interference with Pam's expectancy.

53. DB Private Wealth's conduct is tortious in that it is rooted in fraud, forgery, and misrepresentation that DB Private Wealth has an enforceable mortgage interest against Winnetka.

54. DB Private Wealth's ongoing wrongful conduct is interfering with the reasonable certainty Pam will realize her expectancy.

55. Pam has suffered damages as alleged and set out in this complaint.

# COUNT THREE

## [Violation of the Illinois Consumer Fraud Act,
## 815 ILCS 505/1 et seq ("ICFA")]

56. Pam restates and incorporates all prior paragraphs and allegations as if fully rewritten herein.

57. The Illinois Consumer Fraud and Deceptive Business Practices Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception or fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

58. At all times herein, Pam is a consumer as that term is defined in the ICFA. 815 ILCS 505/1(e).

59. At all times herein, DB Private Wealth engaged in trade or commerce as those terms are defined in the ICFA. 815 ILCS 505/1(f).

60. As alleged in the foregoing paragraphs, and the following sub-paragraphs, DB Private Wealth engaged in unfair acts in its dealings with Pam in violation of law, to wit, DB Private Wealth either did, or failed to do, each of the following things that made this scenario possible:

   A. Failed to follow federal banking regulations and guidance related to knowing your customer.

   B. Failed to follow federal banking regulations and guidance by failing to confirm that the alleged signers of the Issa mortgage had in fact agreed to mortgage their residence.

   C. Closed a seven-figure mortgage loan without the alleged borrowers being present, filling out an application, or personally acknowledging the debt in any way before any employee or agent of DB Private Wealth.

   D. Lacked adequate processes and procedures to detect and prevent fraud and fraudulent conduct against its customers and borrowers generally.

   E. Lacked adequate processes and procedures to detect and prevent fraud in its own mortgage loan processes.

F. Violated usual and customary banking practices, processes, and procedures by closing a seven-figure mortgage loan without the borrowers' presence and without confirming the borrowers' agreement to the transaction.

G. Violated usual and customary practices by failing to investigate and confirm a consumer's waiver of her homestead exemption.

H. Failed to adequately train its staff and management to detect and prevent fraudulent mortgage transactions.

61. After DB Private Wealth's defective practices, procedures, and controls allowed Issa to forge a mortgage for a seven-figure loan, DB Private Wealth still knowingly seeks to foreclose Winnetka using Issa's forged mortgage documents.

62. As set out herein, DB Private Wealth's conduct was directed at consumers generally because DB Private Wealth's defective practices, procedures, and controls impact all consumers who bank with DB Private Wealth, not just Pam.

63. DB Private Wealth's conduct in pursuing foreclosure without a legal right to do so and seeking to enforce a forged mortgage instrument also has the capacity to impact consumers generally, not just Pam.

64. DB Private Wealth's conduct needlessly caused Pam economic damages as set out in this complaint.

65. DB Private Wealth's conduct also needlessly caused Pam significant non-economic harm as set out in this complaint.

66. All the needless harms suffered by Pam proximately resulted from DB Private Wealth's unfair acts and practices.

67. Pam demands such economic, non-economic and punitive damages as a jury deems reasonable and may award after hearing the evidence in this case. Pam also requests the Court award her statutory attorney's fees and the costs of the litigation.

## COUNT FOUR
**[Equitable Relief]**

68. Pam restates and incorporates all prior allegations as if fully rewritten herein.

69. DB Private Wealth continues its efforts to terminate Pam's expectancy interest in Winnetka by attempting to enforce Issa's forged mortgage.

70. DB Private Wealth takes the position Issa's forged mortgage documents are enforceable against Winnetka despite being given proof Issa admitted forging the Winnetka mortgage as well as the notary's sworn testimony admitting Pam and Roger did not sign the Winnetka mortgage.

71. Unless the Court orders DB Private Wealth to remove the cloud on the title to Winnetka, DB Private Wealth's efforts to terminate Pam's interest in Winnetka by use of the fraudulent and forged Issa mortgage will continue.

72. Pam lacks an adequate remedy at law to halt DB Private Wealth's ongoing misconduct in this regard.

73. Pam requests the Court enter an order requiring DB Private Wealth to cancel Issa's forged mortgage.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the entry of judgment granting the following relief:

I. Compensatory damages in an amount that a jury deems reasonable and may award in a sum exceeding $75,000;

II. Punitive damages as a jury deems reasonable and may award after hearing the evidence at trial in such a sum as will adequately punish DB Private Wealth and deter others from engaging in the same or similar conduct in the future;

III. An order or injunction requiring DB Private Wealth to cancel Issa's forged mortgage that is clouding the title of Winnetka;

IV. An award of attorney's fees and costs under the ICFA for the successful prosecution of this action;

V. Any other, further, or additional relief to which Pam may be entitled in law or equity.

**JURY DEMAND**

Pam demands trial by struck jury on all matters so triable.

                                  Respectfully Submitted,

                                  */s/ Nick Wooten*
                                  Nicholas H. Wooten
                                  Head of Consumer Litigation
                                  DC Law, PLLC
                                  1012 W Anderson Lane
                                  AUSTIN, TEXAS 78757
                                  512-220-1800
                                  512-220-1801 FAX
                                  nick@texasjustice.com
                                  ***Lead Trial Counsel for Pam***