UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA WESTON, <br><br> Plaintiff, <br><br> v. <br><br> DB PRIVATE WEALTH MORTGAGE, LTD., <br><br> Defendant. | No. 22 CV 6139 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Defendant DB Private Wealth Mortgage seeks to foreclose on a property that plaintiff Pamela Weston will inherit if her husband dies before her. DB has filed two foreclosure actions in state court. After both were filed, Pamela sued in federal court, alleging tortious interference with a testamentary and economic expectancy and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. DB moves to stay this case pending resolution of the foreclosure in state court. DB also moves in the alternative to dismiss for failure to state a claim. The motion to stay is denied, but the motion to dismiss is granted.

I. **Legal Standard**

Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given [to] them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Although a federal court may abstain from deciding a case when there are parallel state-court and federal-court lawsuits, it may do so only under "exceptional circumstances." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011). Abstention is the "exception, not the rule." *Colorado River*, 424

U.S. at 813. The court's "task in [such] cases…is not to find some substantial reason for the *exercise* of federal jurisdiction…rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983).

Courts considering abstention under the *Colorado River* doctrine must conduct a two-part inquiry. *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004). First, the court asks whether the federal and state actions are parallel. *Id.* If they are not, the doctrine does not apply. *Id.* But if they are, the court must weigh ten non-exclusive factors to determine whether abstention is justified. *Id.* Only the "clearest of justifications" will warrant a stay. *Colorado River*, 424 U.S. at 819; *Lumen Const., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 697–98 (7th Cir. 1985) (stay, not dismissal, is appropriate disposition when court abstains).

"To survive a motion to dismiss, a plaintiff need allege 'only enough facts to state a claim to relief that is plausible on its face.'" *Barwin v. Vill. of Oak Park*, 54 F.4th 443, 453 (7th Cir. 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court reviewing a Rule 12(b)(6) motion to dismiss accepts as true all well-pled facts alleged in the complaint and draws all reasonable inferences in plaintiff's favor. *Gociman v. Loyola Uni. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "Legal assertions or recital of the elements of a cause of action supported by mere conclusory statements," however, do not receive the presumption of truth. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014) (citation and quotations omitted).

## II. Facts

Plaintiff Pamela Weston and her husband Roger Weston have a prenuptial agreement that grants Pam (the name she uses in the complaint) an expectancy interest in a Winnetka, Illinois property. [1] ¶¶ 1, 2.[1] The property has been a marital home for Pam and Roger, and the source of many fond memories and important family events. [1] ¶ 1. Roger is ten years older than Pam—he was 79 at the time the complaint was filed—and the couple's estate and long-term financial planning is based on the expectation that Pam will outlive Roger. [1] ¶ 2. Roger's estate plan set out that Pam would be granted fee simple ownership of the property, free and clear of any liens and mortgages, when Roger died. [1] ¶¶ 2, 7.

From no later than 2009 until late 2017, the couple's trusted confidant, Sultan Issa, was part of an embezzlement scheme. [1] ¶ 3. (Issa has since pled guilty to wire fraud related to the scheme and is currently serving a federal prison sentence. [1] ¶ 3.) As part of the scheme, Issa secretly forged loan documents purporting to grant a first mortgage against the Westons' property to defendant DB Private Wealth. [1] ¶ 4. Issa used the loan proceeds received from DB Private Wealth for his own purposes. [1] ¶ 5.

DB Private Wealth filed Issa's forged mortgage documents as an encumbrance on the property shortly after Issa submitted the documents to DB Private Wealth. [1] ¶ 8. After his conduct was uncovered, Issa admitted that he had forged the

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header placed at the top of the filings.

3

documents. [1] ¶ 9. He also admitted that he misappropriated more than $70 million dollars in funds from clients and financial institutions; provided financial institutions with fraudulent loan documents and forged fraudulent authorizations purportedly in the name of Roger, Pam, and Roger's various business entities; and lied to them about the use, status, and safety of their invested funds. [1] ¶ 10. To continue and conceal his scheme, Issa created and provided false and misleading account statements and made Ponzi-type payments to cover up his fraud. [1] ¶ 10. DB Private Wealth, through its affiliate Deutsche Bank, received a restitution order against Issa for more than $4 million. [1] ¶ 11. Plaintiff alleges upon information and belief that the order covers the funds from the forged loan. [1] ¶ 11.

In 2018, DB filed for foreclosure against the Roger Weston Revocable Trust, Roger Weston, the property, and unknown owners and non-record claimants. [15-2] at 2. Pam Weston was not included as a defendant in this foreclosure action.[2] On September 1, 2022, Weston[3] sent a formal demand letter to DB requesting that it dismiss its foreclosure action and release Issa's forged mortgage against the property. [1] ¶ 13.

After receiving Weston's demand letter, DB filed a new and separate foreclosure action. [1] ¶ 14; [25-1] at 4 (DB's motion for leave to file amended

---

[2] Plaintiff did not mention the 2018 foreclosure action or corresponding docket in her complaint, but I take judicial notice of them because they are public records. *See Watkins v. United States*, 854 F.3d 947, 950 (7th Cir. 2017); *520 S. Michigan Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, n.14 (7th Cir. 2008).

[3] Unless otherwise specified, "Weston" refers to Pam Weston and not her husband Roger.

complaint, with copy of initial 2022 foreclosure action attached).[4] On September 21, 2022, Weston provided DB with an amended demand letter setting forth documents and additional details about Issa's admissions regarding his forgery. [1] ¶ 15. Weston also renewed her demand that DB cease its foreclosure proceedings and release the forged mortgage. [1] ¶ 15. Weston sued DB in this court, alleging tortious interference with a testamentary expectancy, tortious interference with an economic expectancy, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. [1] ¶¶ 44–67.

## III. Analysis

Defendants argue that, pending the outcome of the state-court foreclosure proceedings, I should abstain from deciding this case under the *Colorado River* doctrine. In the alternative, they argue that I should dismiss for failure to state a claim.

### A. Abstention and Stay Under *Colorado River* Doctrine

Under the *Colorado River* abstention doctrine, I first ask whether the federal- and state-court cases are parallel. *Clark*, 376 F.3d at 685. If, and only if, they are, I proceed to analyze ten non-exclusive factors to see if abstention is justified. *Id.*

Suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Id.* at 686 (7th Cir. 2004).

---

[4] Weston says DB filed a new foreclosure action because its original and first amended foreclosure complaints were dismissed and its motion for leave to file a second amended foreclosure complaint was denied. [1] ¶ 14. DB contests this. It says that the 2018 foreclosure action is still pending, [15] at 11; [25] at 12, and provided the state-court docket showing that, [15-2]. After independently verifying the docket, it's clear that the 2018 case is pending appeal, though the status of the case does not ultimately affect the analysis.

I examine "whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Adkins*, 644 F.3d at 499 (quoting *Tyrer v. City of South Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)). Cases can be parallel even if there is not "formal symmetry" between the two actions. *Id.* But there should be a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* (citation omitted).

Weston argues that the cases can't be parallel because they involve different parties. [21] at 12. The 2022 foreclosure suit was filed against the Roger Weston Revocable Trust, Roger Weston, the property, and unknown owners and non-record claimants. [25-1] at 4.[5] Pam Weston is not named as a defendant. DB downplays this fact. It says that it moved in April 2023 to add her as a defendant in the 2022 foreclosure action, so Weston's absence in the state suit "may soon be a moot point." [25] at 7; [25-1] (motion to add Weston as defendant). But DB waited to file the motion to add her as a defendant not only until after Weston filed her suit, but until after she filed a response brief noting her absence. *Compare* [21] (filed 3/31/23), *with* [25-1] (filed 4/17/23). More importantly, there's no guarantee that the state court will grant DB's motion, in which case, Weston would continue to be absent from the state case.

Weston acknowledges that *Colorado River* doesn't require the parties to be identical, and that it just requires that their interests be substantially the same. [21]

---

[5] The case caption does not list Sultan Issa as a defendant, but the body of the complaint does.

6

at 12. But she says DB hasn't demonstrated similarity of interests. "Other than Roger being Pam's husband, there is little evidence before this Court about the Weston Defendants, making it difficult to assess whether the Weston Defendants have interests that are aligned with Pam," she says. [21] at 12. The filings themselves provide information about the parties' interests, though. The Weston defendants' affirmative defenses and counterclaims in the 2018 foreclosure action make clear that they want DB's mortgage to be found invalid and unenforceable, and they want DB to be found liable for damages they say resulted from the allegedly improper conduct. [15-1]. Pamela Weston shares those interests. [1]; [21]. The parties are therefore substantially the same.

DB next argues that the legal and factual issues in the cases are substantially similar, and a decision in the state-court proceeding will dispose of all the claims in this suit. [15] at 13. Weston concedes that her case will "touch on some of the same facts that DB[] will litigate in the foreclosure suit, such as the validity and enforceability of the forged mortgage." [15] at 13. But she argues that the state court won't dispose of all the claims presented here "because the legal claims involved in the two suits are different." [21] at 13. She notes that while the state-court litigation involves only an effort to foreclose on a property, her case involves three separate causes of action. [21] at 13.

Suing under different causes of action doesn't necessarily mean that two cases aren't parallel. *Clark*, 376 F.3d at 686–87 (7th Cir. 2004) ("Just as the parallel nature of [] actions cannot be destroyed by simply tacking on a few more defendants, neither

7

can it be dispelled by repackaging the same issue under different causes of action."). Here, though, the different causes of action mean that the state-court litigation might not dispose of all the claims presented in this suit. True, if the state court finds that the mortgage is valid and enforceable, then plaintiff's tortious-interference-with-an-expectancy claims will fail, since both depend on the mortgage being invalid or unenforceable. [1] ¶¶ 44–55. But if the state court finds the mortgage invalid and unenforceable, the tortious-interference claims won't automatically be sorted out—even if the state court finds that DB committed tortious conduct. Weston would still have to prove additional elements: 1) that she had an expectancy in the property, 2) DB intentionally interfered with it, 3) DB committed *specific kinds* of tortious conduct, like undue influence, fraud, or duress, 4) there was a reasonable certainty that Weston's expectancy would have been realized but for the interference, and 5) Weston suffered damages. *See DeHart v. DeHart*, 2013 IL 114137, ¶ 39. DB's argument that a decision in the state-court proceedings will dispose of all claims in this court rests on the assumption that the state court will find the mortgage valid. But there's only a substantial likelihood that state litigation will dispose of all claims if it will do so regardless of which side prevails. *See AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 520–21 (7th Cir. 2001). That is not the case with plaintiff's tortious-interference claims.

Defendant's reliance on *Kinzy v. Howard & Howard, PLLC*, doesn't convince me otherwise. [25] at 9–10. The court there said the state-court action would likely dispose of all the claims in federal court, but in reaching that conclusion, only

8

considered what would happen if the state court found the mortgage valid and enforceable. 2017 WL 168480, at *5 (N.D. Ill. Jan. 17, 2017). The court didn't consider whether all claims would be disposed of if the state court found the mortgage invalid and unenforceable. *Id.*

Because some claims are not parallel, I don't address whether the remaining claim is parallel. Neither the Supreme Court nor the Seventh Circuit has explicitly said that partial stays under *Colorado River* are improper. But the Supreme Court has said that "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do *in resolving any substantive part of the case.*" *Moses H. Cone Memorial Hosp.*, 460 U.S. at 28. That language strongly suggests that a case must be stayed or retained in its entirety. *See also United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1199, 1203–05 (9th Cir. 2021) ("Our precedent does not allow a partial stay pursuant to *Colorado River*, except in rare circumstances."); *but see Sterling Fed. Bank, F.S.B v. Countrywide Fin. Corp.*, 2012 WL 2368821, at **10–16 (N.D. Ill. June 21, 2012) (analyzing some counts and not others under *Colorado River*); *Green v. Indal, Inc.*, 565 F. Supp. 805, 809 (S.D. Ill. 1983) (analyzing counts separately); *Shapiro v. Tarnay*, 1987 WL 19140, at *3 (N.D. Ill. Oct. 22, 1987) (same).

Defendant's motion to stay, [14], is denied, and I decline to abstain under the *Colorado River* doctrine.

### B. Motion to Dismiss

As noted above, to state a claim for tortious interference with a testamentary or economic expectancy, Weston must show: "(1) the existence of [her] expectancy; (2)

9

[DB's] intentional interference therewith; (3) tortious conduct such as undue influence, fraud or duress; (4) a reasonable certainty that the expectancy would have been realized but for the interference; and (5) damages." *DeHart*, 2013 IL 114137, ¶ 39; *In re Estate of Roeseler*, 287 Ill.App.3d 1003, 1021 (1st Dist. 1997).

Weston's tortious-interference claims are not based on DB's pre-litigation conduct, but instead on DB's efforts to foreclose on the property. [1] ¶¶ 46–47, 52–54. Weston argues that DB's attempts to enforce the mortgage in state court constitute tortious interference with expectancy. [21] at 20–21. This is a non-starter. Under Illinois law, the only causes of action for the wrongful filing of a lawsuit are malicious prosecution, abuse of process, or "unauthorized filing" (filing on behalf of a plaintiff without their knowledge or consent). *Havoco of America, Ltd. v. Hollobow*, 702 F.2d 643, 647 (7th Cir. 1983) (citing *Lyddon v. Shaw*, 56 Ill.App.3d 815, 821–23 (2d Dist. 1978)); *Safeway Ins. Co. v. Spinak*, 267 Ill.App.3d 513, 516 (1st Dist. 1994); *see also Pantone v. Demos*, 59 Ill.App.3d 328, 331 (1st Dist. 1978); *Safeway Ins. Co. v. Spinak*, 267 Ill.App.3d 513, 516 (1994); *Whittler v. Midland Funding, LLC*, 2015 WL 3407324, at *3 (N.D. Ill. May 27, 2015). A tortious-interference claim based on the wrongful filing of a suit is not cognizable. *Havoco of America, Ltd.*, 702 F.2d at 647. Counts I and II (tortious interference with a testamentary expectancy and tortious interference with an economic expectancy) are dismissed with prejudice.

To state an unfair-practices claim under ICFA, Weston must show that DB 1) committed an unfair act, 2) with the intent that others rely on it, 3) the act occurred during a course of conduct involving trade or commerce, and 4) it caused actual

10

damages. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019); *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). A practice is unfair under ICFA if it "offends public policy"; "is immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (2002)).

Pamela alleges that DB engaged in unfair acts by failing to confirm that the alleged signers of the mortgage had in fact agreed to mortgage their residence in violation of federal banking regulations; closing a seven-figure mortgage loan without the alleged borrowers being present, filling out an application, or personally acknowledging the debt before an employee or agent of DB; and lacking adequate procedures to detect and prevent fraud, among other things. [1] ¶¶ 60–67.[6]

Defendant argues that Weston's ICFA claims are time-barred because she was aware of the alleged conduct more than three years before she brought this suit. [15] at 25–26; [25] at 17–18. Weston says this argument is improper at this stage because affirmative defenses should not be resolved on a motion to dismiss unless it is clear from the face of the complaint that the allegations are barred by the statute of limitations. [28] at 8–9; s*ee Logan*, 644 F.3d at 582. I can also dismiss on statute-of-limitations grounds if it is clear from documents of which I've taken judicial notice that plaintiff fails to state a claim. *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). That's the case here.

---

[6] She also seems to allege that DB's foreclosure suit is itself an ICFA violation. [1] ¶ 63; [21].

The statute of limitations under ICFA is three years. 815 ILCS 505/10a(e). An ICFA claim accrues on the date a plaintiff "knows or reasonably should know of [her] injury and also knows or reasonably should know that it was wrongfully caused." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (quoting *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414 (1981)); *accord Kjarsgaard v. Reilly*, 2022 IL App (1st) 211459-U ¶¶ 34–35; *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

Weston became aware of Issa's fraudulent conduct in October 2017. [1] ¶ 6. She may not have been aware at that time of DB's alleged role in the conduct, but at the latest, she became aware of DB's role when defendants in the foreclosure action acknowledged notice of the foreclosure by filing an answer and counterclaim on November 16, 2018. [25-2]. Weston was not a defendant in the 2018 foreclosure action, but she says that she had a testamentary and economic expectancy in the property at issue. If she didn't actually know of her injury from DB's mortgage practices at that time, she reasonably should have known.

Weston says that the date on which she learned of DB's underlying conduct is irrelevant because the 2022 foreclosure action "gives rise to a new and different effort" to enforce the mortgage. [21] at 25. The second suit, she says, is a "discrete, separate, and identifiable wrong." [21] at 25. But as is true of tortious-interference claims, ICFA claims cannot be based on bringing suit. *See Havoco of America, Ltd.*, 702 F.2d at 647; *see also Rosales v. Weltman, Weinberg & Reis Co.*, 2017 WL 1426957, at *5 (N.D. Ill. Apr. 24, 2017); *Whittler v. Midland Funding, LLC*, 2015 WL 3407324, at *3 (N.D. Ill.

May 27, 2015). Weston's ICFA claim must rest on DB's non-litigation actions, all of which took place outside the statute of limitations.

Weston's ICFA claim is dismissed with prejudice because it is time-barred. This dismissal has no preclusive effect on defendants' ICFA counterclaims in the 2018 foreclosure action; those claims were filed within the three-year statute of limitations.

## IV. Conclusion

DB's motion to abstain and stay, [14], is denied. DB's motion to dismiss, [14], is granted. The Clerk shall enter judgment in favor of defendant and terminate this case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 31, 2023